838 F.2d 468
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ralph Lewis CLARK, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kevin ATTAWAY, Defendant-Appellant.
 Nos. 87-5544(L), 87-5547.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 4, 1987.
Decided Jan. 26, 1988.
 
 Michael Jay Weiser, Gerald Bruce Lee (Cohen, Dunn & Sinclair, P.C. on brief) for appellant.
 William G. Otis, Assistant United States Attorney (Henry E. Hudson, United States Attorney, Karen P. Tandy, Assistant United States Attorney on brief) for appellee.
 E.D.Va.
 AFFIRMED.
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CR-86-309-A).
 Before CHAPMAN and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Appellants Ralph Clark and Kevin Attaway challenge their convictions for offenses committed during a prison riot at the Lorton Reformatory. Clark argues that the district court's refusal to give a requested jury instruction on self-defense was reversible error. Attaway contends that reversal of his conviction is required because evidence of a juvenile offense was introduced at trial. Because we find that there was no error in the self-defense instruction delivered by the district judge as to Clark and that no prejudice resulted from the erroneous introduction of evidence in Attaway's case, we affirm the convictions.
 
 I.
 
 2
 The events in this case occurred at Youth Center II of the Lorton Reformatory on January 1, 1986. On that day a large group of inmates, including Attaway, attacked Dormitory 3, where Clark resided, wielding baseball bats, chains, shanks, and other weapons. The inmates of Dormitory 3 and the corrections officers stationed there attempted to repulse several violent attacks and to barricade the entrances of the dormitory.
 
 
 3
 During the melee, Clark and other inmates exited the dormitory through broken windows, and once outside in the courtyard engaged the original group of invaders in a violent struggle. Clark and the government presented two different versions of these events. Clark claimed that he and the other inmates were forced to leave the dormitory for their own safety, as the guards were unable to control the situation. Clark testified that he had armed himself with a table leg in order to protect himself. Clark stated that he was generally fearful during the riot, but acknowledged that none of the invading inmates attempted specifically to harm him. In Clark's words, "they wasn't attacking me. If they had wanted to hurt me, they could have hurt me you know but didn't nobody actually come up at me, you know to attack me."
 
 
 4
 Several guards, on the other hand, testified that Clark was eager to get out of the dormitory so that he and the other inmates could attack the rival group. Guards testified that Clark arrogantly paraded about the courtyard, brandishing a twelve inch shank and a metal pipe. Clark himself acknowledged that even after he was out on the courtyard he was not targeted by the other inmates. Rather, "anybody that was coming out windows, they was coming at them."
 
 A.
 
 5
 Clark was charged with rioting while carrying a dangerous or deadly weapon in violation of 18 U.S.C. Sec. 13 (assimilating Va.Code Ann. Sec. 18.2-405), and possession of a weapon in violation of 18 U.S.C. Sec. 13 (assimilating Va.Code Ann. Sec. 53.1-203(4)). At trial, Clark's attorney requested an instruction on self-defense. The district court refused to give Clark's proffered instruction.
 
 
 6
 The district court first instructed the jury that it must find four elements to have been proved beyond a reasonable doubt in order to convict on a charge of rioting with a deadly weapon. First, the defendant must have acted in concert with two or more persons. Second, the defendant in so doing must have used unlawful force or violence. Third, the violence must have seriously jeopardized public safety. Fourth, the defendant must have carried a deadly or dangerous weapon. After having instructed the jury on the elements of the offense, the court gave the following instruction:
 
 
 7
 The defendant Clark has asserted the defense of self-defense. If the only reason that Clark armed himself was to protect himself under the reasonable apprehension of fear for his own safety or fear of serious bodily injury, and he did no more than that, then he would not be guilty of rioting with a dangerous or deadly weapon. However, if the elements of rioting with a dangerous or deadly weapon as I have outlined them to you have been proven by proof beyond a reasonable doubt, it is no defense that that defendant may have acted in self-defense.
 
 
 8
 Clark was convicted of both charges.
 
 B.
 
 9
 Attaway was charged with rioting while carrying a dangerous or deadly weapon in violation of 18 U.S.C. Sec. 13 (assimilating Va.Code Ann. Sec. 18.2-405), resisting a District of Columbia corrections officer in violation of D.C.Code Ann. tit. 22, Sec. 505(a), and possession of a weapon in violation of 18 U.S.C. Sec. 13 (assimilating Va.Code Ann. Sec. 53.1-203(4)). Attaway testified in his own behalf. On cross-examination, the first question asked of Attaway by the prosecutor was whether he had been convicted of assault with a deadly weapon in 1979. Attaway answered that he had. In 1979, Attaway was sixteen years of age.
 
 
 10
 After the evidence of a juvenile conviction was heard by the jury, Attaway immediately moved for a mistrial. After hearing argument, the district court denied the motion. The district court directed the jury to disregard the evidence, and cautioned the jury that they must not consider the juvenile conviction as relevant either to the charges before them or to Attaway's credibility.
 
 
 11
 Shortly thereafter, the government revealed that it had been mistaken as to the existence of the juvenile conviction in the first place, due to an erroneous computer printout. The district court then told the jury that not only should it disregard the mention of a 1979 conviction, but that there had in fact been no conviction, despite Attaway's admission of it. When the government prepared to resume its rebuttal, it asked the judge's advice on the use of Attaway's two 1983 adult convictions for assault with a deadly weapon and possession of an unregistered gun. The court instructed the government that it had "better leave it alone," and the government did not use this otherwise proper impeachment evidence.
 
 
 12
 Attaway was acquitted of rioting with a dangerous or deadly weapon, and acquitted of unauthorized possession of a weapon. He was convicted of a lesser included offense of rioting, and of resisting a corrections officer.
 
 II.
 
 13
 We find that the district court's instruction on self-defense was proper as a matter of law. The instruction correctly reflected the evidence offered at trial. To establish self-defense, a defendant must show that he reasonably believed that he was in imminent danger of death or serious bodily harm. Clark's own testimony shows that he did not act under such a belief. Clark stated that the attacking inmates did not specifically target him for harm; the inmates "could have hurt me," said Clark, but "didn't nobody actually come at me."
 
 
 14
 Given this testimony, the district court was correct in holding that self-defense was relevant only to Clark's decision to arm himself for protection. Any further violent acts were not, by Clark's own testimony, motivated by fear of imminent death or serious bodily harm. On the basis of the record, there was no evidence from which a reasonable juror could have found that any acts of violence committed by Clark were done for self-protection in reasonable fear of imminent bodily harm. The instruction given by the district court correctly reflected the evidence before the jury and the law of self-defense; Clark was entitled to nothing more.
 
 III.
 
 15
 On the facts of defendant Attaway's case, we find that the admission of evidence of a juvenile conviction was not prejudicial. We emphasize nonetheless that the admission of this evidence was error, and that the government has an important obligation to prevent this type of occurrence. The government's question was apparently unintentional--the result of confused court records. Nonetheless, the defendant in this case was in his early twenties, and the 1979 conviction was seven years old. These facts surely must have suggested that the conviction might not be proper material for the jury's consideration.
 
 
 16
 The subsequent course of Attaway's trial and its eventual result, however, make clear that he suffered no prejudice. The trial judge gave the jury a cautionary instruction, then instructed the jury that there had been a mistake, and that there was in fact no conviction to consider. Further, as a result of the mistaken introduction of the juvenile evidence, the government did not introduce evidence of the more recent adult convictions of the same offense. Finally, and most importantly, Attaway was acquitted of the two charges involving possession and use of a weapon. These were the two charges as to which the danger of a prejudicial effect on the jury from a previous weapons conviction was greatest. Conviction only of the lesser included offense of rioting and the acquittal on the weapons possession charge indicate that Attaway was in no way prejudiced by the erroneous admission of the 1979 conviction.
 
 
 17
 Attaway made at least an even trade as a result of the government's error. In return for evidence of a juvenile conviction, which the jury was admonished not to consider, and which it was then told had never happened, Attaway was able to avoid the introduction of his more recent adult convictions for assault with a deadly weapon and possession of an unregistered gun. Far from being prejudiced, Attaway may actually have benefited from the government's error.
 
 
 18
 The judgments of conviction of Ralph Clark and Kevin Attaway are hereby
 
 
 19
 AFFIRMED.